FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY SADLIER, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:17-CV-05115-EFS <br><br> **ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 13 & 17.[1] Plaintiff Timothy Sadlier appeals the Administrative Law Judge's (ALJ) denial of benefits. *See* ECF Nos. 1 & 13.[2] The Commissioner of Social Security (Commissioner), as the Defendant, asks the Court to affirm the ALJ's determination that Mr. Sadlier is not disabled and is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. *See* ECF Nos. 8 & 17. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court denies Mr. Sadlier's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

---
[1] For the sake of consistency, all citations to electronically filed documents refer to the page number as it appears in PDF format.
[2] Mr. Sadlier's motion for summary judgment was initially filed as ECF No. 12, but he then filed a praecipe, ECF No. 13.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 1

**I. <u>Standard of Review</u>**

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). As such, unless such error was harmless, the Court will reverse an ALJ's decision if he applied the incorrect legal standard in weighing the evidence and arriving at his decision. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Likewise, the Court will reverse an ALJ's decision that is not supported by substantial evidence. Notably, substantial evidence is "more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). That said, the Court may not substitute its judgment for the Commissioner's. If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

**II.  Five-Step Disability Determination**

The ALJ uses a five-step sequential evaluation process to determine whether an adult claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The burden of proof shifts during this process. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. At step five, however, the burden shifts to the ALJ to show that the claimant is not entitled to benefits. *See Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).

At step one, the ALJ determines whether the claimant is currently engaged in a substantial gainful activity. *Id.* § 416.920(a)(4)(i). If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the ALJ proceeds to the second step.

At step two, the ALJ assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, the disability claim is denied. If he does, the evaluation proceeds to the third step.

At step three, the ALJ compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be

disabled. If the impairment does not, the evaluation proceeds to the fourth step.

At step four, the ALJ assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

At the fifth and final step, the ALJ determines whether the claimant can perform other work in the national economy in light of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). The Commissioner has the burden to show (1) that the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If both these conditions are met, the claim is denied; if not, it is granted.

### III. Facts, Procedural History, and the ALJ's Findings[3]

Plaintiff Timothy Sadlier was born on July 17, 1982. *See* Administrative Record, ECF No. 9, (AR) 98. He states that as a child, he was diagnosed with Attention Deficit Hyperactivity Disorder and Bipolar disorder. *See* AR 346. Throughout the years, Mr. Sadlier has

---

[3] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 4

been diagnosed with several mental disorders, including anxiety, bipolar disorder (rapid-cycling), polysubstance abuse (including methamphetamine, marijuana, and alcohol), and antisocial personality disorder. AR 119, 312–14, 328, 344.

Mr. Sadlier is 5'9" tall and weighs approximately 240 pounds. *See* AR 99. Mr. Sadlier lives with his parents in Kennewick, Washington. AR 44, 184. He reports that, on an average day, he spends his time watching television, listening to the stereo, smoking marijuana, playing video games, going on Facebook, "going out" with his brother, and then smoking more marijuana. AR 70–71. He has no significant work history. *See* AR 245.

On November 6, 2013, Mr. Sadlier filed a claim for Supplemental Security Income (SSI) Disability, alleging an onset date of January 1, 2012. AR 100, 183. A disability examiner determined that Mr. Sadlier was not disabled and denied him benefits on February 19, 2014. AR 125. On March 18, 2014, Mr. Sadlier's claim was also denied upon reconsideration. AR 132. Mr. Sadlier requested a hearing before an ALJ, AR 138, and that hearing occurred on October 27, 2015, in Seattle, Washington before ALJ Wayne N. Araki. AR 40. Mr. Sadlier was represented by Shane B. Smith. AR 40. During the hearing, Mr. Sadlier gave testimony, as did vocational expert Mark A. Harrington. AR 40.

On November 30, 2015, the ALJ issued a decision finding Mr. Sadlier not disabled for purposes of the Social Security Act. AR 20. At step one, the ALJ concluded that Mr. Sadlier had not engaged in substantial gainful activity since his application date. AR 25. At step two, the ALJ found that Mr. Sadlier has the following

severe impairments: affective disorder/bipolar, anxiety disorder, personality disorder, and substance addiction disorder. AR 25. And, at step three, the ALJ determined that these limitations do not meet or medically equal the severity of any listed impairment. AR 26.

At step four, the ALJ found that — despite his impairments — Mr. Sadlier has the RFC to perform "a full range of work at all exertional levels," so long as such work includes the following nonexertional limitations:

> Infrequent superficial interaction with the general public; once job duties are learned, he can perform occupations with an SVP level of 1-2, with interactions with supervisors consistent with these occupations; occasional superficial interaction with coworkers; job duties do not require the assistance of others for completion; job duties do not require work in a team setting; he is able to adjust to changes in the work setting generally associated with occupations with an SVP of 1-2; job duties do not require independent planning and/or goal setting.

AR 27.

At step five, the ALJ noted that the primary issue was whether Mr. Sadlier's limitations relating to his personality disorder prevented him from behaving in a manner suitable to a workplace environment. AR 29. The ALJ further noted that, contrary to Mr. Sadlier's self-reporting, the documentary evidence shows he can interact with others and be around people without incident, if doing so serves his own interests. AR 29. The ALJ therefore concluded that Mr. Sadlier "does have the capacity to modify his behavior. He clearly knows that his behavior is right or wrong, and has made choices based on the consequences." AR 29.

Then — based on the testimony of the vocational expert in consideration of Mr. Sadlier's age, education, work experience, and

residual functional capacity — the ALJ found that even with his nonexertional limitations, Mr. Sadlier is capable of performing the requirements of the following representative occupations:

> landscape laborer, Dictionary of Occupational Titles code 408.687-014 (100,000 jobs nationally); construction worker II, 869.687-026 (150,000 jobs nationally); janitor, 381.687-018 (100,000 jobs nationally); packager, 920.587-018 (50,000 jobs nationally); assembler, small products,706.684-022 (25,000 jobs nationally); and bottle packager, 920.685- 026 (30,000 jobs nationally). The representative occupations are light and unskilled, with an SVP level of 2, and range from light to very heavy in exertion.

AR 33.

As such, the ALJ denied Mr. Sadlier's claim at step five, finding that Mr. Sadlier is "capable of making a successful adjustment to other work that exists in the national economy." AR 33.

The Appeals Council denied Mr. Sadlier's request for review, AR 1, making the ALJ's decision the final agency action for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. Mr. Sadlier filed this lawsuit on August 3, 2017, appealing the ALJ's decision. ECF No. 1. The parties then filed the present summary-judgment motions. ECF Nos. 13 & 17.

### IV. <u>**Arguments & Analysis**</u>

In asking for the ALJ's decision to be reversed, Mr. Sadlier argues that the ALJ erred in three ways: (A) giving little weight to Dr. Wert's opinion that Mr. Sadlier is unable to work; (B) rejecting limitations reported by Mr. Sadlier's mother; and (C) rejecting Mr. Sadlier's claims regarding the severity of his functional limitations. The Court addresses each challenge to the ALJ's decision in turn.

**A.  Dr. Wert's Opinion**

Examining psychologist Paul M. Wert, Ph.D. recommended that Mr. Sadlier pursue SSI Disability.  In his report, Dr. Wert stated that Mr. Sadlier "does not present with the emotional, affective, and behavioral stability necessary to become gainfully employed.  [Mr. Sadlier] does not present as being capable of managing the stressors and pressures of either job training or actual employment." AR 501. The ALJ, however, gave this opinion little weight, providing the following explanation:

> [Dr. Wert's] opinion is inconsistent with the claimant's mental status findings and with the record as a whole. Dr. Wert observed that his motor activity was unremarkable, his attention and concentration were within normal limits, and he was oriented.  The claimant's immediate and recent memory were within normal limits, although his remote memory was somewhat impaired.  His flow of speech was normal.  He was somewhat guarded and irritable, his affect was restricted and his thought content suggested suspicions.  However, the claimant's organization of thought was logical and goal-directed, with no indications of circumstantiality, tangentiality, or loosening of associations.  He denied indications of perceptual disturbances, such as auditory or visual hallucinations

AR 31.

Mr. Sadlier argues that the ALJ improperly "cherry-pick[ed] the relatively benign mental status exam from the totality of Dr. Wert's assessment." ECF No. 13 at 10.  According to Mr. Sadlier, the ALJ also erred by "failing to explain which part of Dr. Wert's opinion was inconsistent with the record and why." ECF No. 13 at 11.

**1.  Legal Standard**

"In disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v.*

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 8

*Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks omitted). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Id*. To reject an examining physician's opinion that is contradicted by another doctor, however, the ALJ need only provide "specific and legitimate reasons" that are supported by "substantial evidence" in the record. *Id.* "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted).

**2. Analysis & Conclusion**

The ALJ did not "cherry pick" from Dr. Wert's report. The ALJ directly addressed, and rejected, Dr. Wert's opinion that Mr. Sadlier is not employable. In doing so, the ALJ noted incongruities within Dr. Wert's report and that the bulk of the record contradicted Dr. Wert's opinion. For instance, the ALJ pointed out that Dr. Wert's August 2012 opinion was at odds with a newer medical report that was authored by State agency psychological consultant Diane Fligstein, PhD. AR 31, 123 ("[Mr. Sadlier] could keep to a schedule and maintain regular attendance and complete a normal workweek without special accommodation."). Likewise, Dr. Wert's report was largely inconsistent with Mr. Sadlier's prison medical records and the notes authored by Mr. Sadlier's various mental-health treatment providers. *See, e.g.*, AR 330–40, 405–59.[4]

---

[4] For example, after conducting a mental-health assessment in December 2013, the treatment provider noted that Mr. Sadlier "showed good eye contact, was polite, cooperative and seemed engaged in the evaluation process," and that

Contrary to Mr. Sadlier's suggestion otherwise, the ALJ was not required to counter Dr. Wert's opinion on a point-by-point basis. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding that an ALJ need not discuss "every piece of evidence" in order to demonstrate that the ALJ did not "selectively analyze" the evidence). By setting forth and discussing the ample evidence that contradicted Dr. Wert's opinion, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting that opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (noting that the ALJ was justified in rejecting an examining psychologist's opinion where it conflicted with "the overwhelming weight of the other evidence of record"); *see also* 20 C.F.R. § 416.927(c)(3) (weight assigned to medical source can depend on evidentiary support and the explanation provided). The Court therefore holds that the ALJ did not err by assigning little weight to Dr. Wert's opinion.

## B. Report by Mr. Sadlier's Mother

Mr. Sadlier's mother submitted a functional report in support of his application for SSI Disability. AR 267. In describing how Mr. Sadlier's conditions limit his ability to work, his mother said that "his obsessive compulsive disorder is very prominent, he cannot change tasks easily, he has a hard time understanding normal directions, [and he has] antisocial behaviors." AR 267. The ALJ gave partial weight to this report, explaining as follows:

---

"Mr. Sadlier believed some of his strengths include having creative ideas, being innovative and being a hard worker. He said he enjoyed meeting new people [and] traveling . . . ." AR 407-08.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 10

> The claimant does not have a medically determinable impairment of obsessive compulsive disorder. Contrary to her reports that he is argumentative and combative, his behavior in the medical records has been appropriate. In addition, the Social Security employee who interviewed the claimant when he filed his application did not observe any difficulties. The claimant, who came in with his mother, seemed in good spirits.

AR 31.

Mr. Sadlier argues that his mother never alleged that he could not be agreeable, "so this is not a valid reason to discredit the statement that frequently he is disagreeable to the point of not being able to maintain competitive employment." ECF No. 13 at 15.

### 1. Legal Standard

Evidence from a layperson relating to a claimant's symptoms "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). If the ALJ intends to discount the testimony of any lay witnesses, he "must give reasons that are germane to each witness." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

### 2. Analysis & Conclusion

The ALJ properly noted that the record does not indicate Mr. Sadlier suffers from obsessive compulsive disorder, let alone that such a condition manifests in a way that is "very prominent" so as to interfere with potential employment. Further, the ALJ correctly observed that the treatment records — as a whole — show that when he wants to, Mr. Sadlier is consistently capable of interacting with others in a reasonable, polite manner. These reasons are sufficiently germane to reject portions of his mother's report. The Court holds

that the ALJ did not commit reversible error by assigning limited weight to the report submitted by Mr. Sadlier's mother.

**C.     Mr. Sadlier's Claims Regarding Functional Limitations**

In applying for SSI Disability, Mr. Sadlier's primary argument was that his personality disorders rendered him incapable of maintaining employment. The ALJ found that Mr. Sadlier's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Mr. Sadlier's statements "concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible, stating as follows:

> The question is whether or not the claimant is able to modify his behavior to adjust to be able to work. After reviewing the evidence and taking the claimant's testimony, I believe that he does have the capacity to modify his behavior. He clearly knows that his behavior is right or wrong, and has made choices based on the consequences. When asked if he would have made a different decision knowing now what happened, his answer was yes. He acknowledged that he understood he was breaking the law, but wanted to do so and did not care. He did testify that he did not know some of the things that got him in trouble were a violation of certain rules.
>         . . .
> His history of crimes of dishonesty is relevant in weighing the credibility of the claimant's allegations, particularly in combination with other factors.

AR 29–30.

**1.     Mr. Sadlier's Symptom-Severity Testimony**

Mr. Sadlier argues that even if he is capable of distinguishing right from wrong, this "is not clear and convincing evidence that his behavior is entirely volitional or that his personality disorder does not prevent him from disregarding these norms." ECF No. 13 at 17. Mr. Sadlier suggests that although his criminal history "may suggest that he has a propensity to be dishonest, failure to conform to the

law is part and parcel of [his] impairment and supports, rather than detracts from, his claim of a severe personality disorder." ECF No. 13 at 19.

### a. Legal Standard

The Court of Appeals for the Ninth Circuit has explained that "credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Nonetheless, in the Ninth Circuit, if a claimant's impairment could reasonably be expected to produce the symptoms alleged in the testimony, and there is no evidence that the claimant is malingering, an ALJ may reject the claimant's testimony about the severity of his symptoms only upon providing "specific, clear, and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). General findings are insufficient; the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Examples of legitimate bases to discredit a claimant's testimony include his "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct," as well as other "ordinary techniques of credibility evaluation." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Fair*, 885 F.2d at 604 n.5.

### b. Analysis & Conclusion

The ALJ discussed at length several specific instances in which the record contradicted Mr. Sadlier's statements regarding the severity of his symptoms. For instance, the ALJ cited to Bureau-of-Prisons treatment records that indicated Mr. Sadlier suffered from neither "significant psychological distress" nor any "significant

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 13

mental health problems," AR 431. The ALJ also cited Mr. Sadlier's mental-health evaluation and treatment records, which show he often engaged in activities inconsistent with disabling social limitations. AR 30; *see also, e.g*, AR 332. Indeed, as noted by the ALJ, the record overwhelmingly demonstrates that Mr. Sadlier is capable of following rules when he believes doing so is in his own interest, and that he has at least some ability to be around other people. AR 29. Thus, the ALJ reasonably stated, "I do not believe that [Mr. Sadlier] cannot control his behavior. Rather it is more that he feels that he should not have to comply with societal norms if he does not want to but at the same time he feels that society should support him in his choices." AR 30.

Mr. Sadlier misses the mark by arguing that his criminal history is consistent with, or indicative of, a severe personality disorder. Regardless of whether a personality disorder explains or somehow contributed to his criminal acts, Mr. Sadlier's crimes reflect a history of dishonesty and a willingness to engage in deceit and manipulation when he believes it to be in his best interest.[5] The ALJ was therefore justified in using Mr. Sadlier's criminal history as a basis for rejecting his symptom-severity testimony. *See Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010) (affirming credibility determination based in part on claimant's criminal history); *Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001) (same).

---

[5] Mr. Sadlier admitted to committing crimes including, but not limited to, theft, forgery, check fraud, larceny, trespassing, and failure to register as a sex offender. AR 343–48; *cf. also*, AR 398 (psychiatrist noting that Mr. Sadlier "stated he was a pathological liar and had numerous runaways and fights, cruelty to animals, and numerous Breaking and Entry charges and such behavior starting in his childhood").

The ALJ provided several valid, specific, clear, and convincing reasons for rejecting Mr. Sadlier's testimony regarding the severity of his symptoms. As such, the Court holds the ALJ did not reversibly err by finding that Mr. Sadlier's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

**2.  Application of the Clear-and-Convincing Standard**

Raising the issue for the first time in his reply, ECF No. 18, Mr. Sadlier asserts another reason why the ALJ erred in finding him not entirely credible. According to Mr. Sadlier, the Social Security Administration has a policy of supporting claimant-credibility findings with the substantial-evidence standard rather than the clear-and-convincing standard that is required by the Court of Appeals for the Ninth Circuit. Because of this policy, Mr. Sadlier argues, the ALJ must be presumed to have applied the incorrect legal standard. ECF No. 18 at 3. And in support, Mr. Sadlier cites to *Gutierrez v. Commissioner of Social Security*, in which a Ninth Circuit panel stated that "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." 740 F.3d 519, 523 (9th Cir. 2014).

        a.  <u>Legal Standard</u>

Notably, *Gutierrez* did not involve credibility determinations; it does not stand for the proposition that an ALJ must announce that he is applying the clear-and-convincing standard when making an adverse credibility determination. To the contrary, the Ninth Circuit has repeatedly held that an ALJ's adverse credibility determination

regarding a claimant's subjective reporting on the severity of his symptoms will be upheld so long as the ALJ's decision includes "specific, clear and convincing reasons" for discrediting the testimony. *See, e.g.*, *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009), *Smolen*, 80 F.3d at 1284.

         b.    <u>Analysis & Conclusion</u>

Even if the ALJ believed he need only provide substantial evidence to support his adverse credibility determinations, as discussed above, the ALJ nonetheless provided specific, clear and convincing reasons as to why he did not find Mr. Sadlier entirely credible. Further, the entirety of the ALJ's decision clearly shows that he would have reached the same conclusion under either the substantial-evidence standard or the clear-and-convincing standard. Thus, even assuming the ALJ meant to apply the incorrect standard, such error was harmless; the Court may not reverse an ALJ's decision on account of an error that is "inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1111, 1115.

**D.    Request for Immediate Award**

In his motion, Mr. Sadlier requests that the Court remand to the Commissioner for an immediate award of benefits. ECF No. 13 at 15–16; *see also Garrison*, 759 F.3d at 1020. Because the Court holds that the ALJ did not reversibly err, however, this request is denied.

////

///

//

/

## V. Conclusion

In summary, ample evidence supports the ALJ's disability findings:

> [Mr. Sadlier] believes he should get SSI because he does not want to comply with the rules. The evidence overall establishes that his behavior is volitional and he can control his behavior and comply with rules if he chooses. Given his severe personality disorder, substance use disorders, and to some extent his other psychiatric disorders, he has functional limitations, but not the extent he claims.

AR 30.

The Court holds that the ALJ committed no reversible error by giving little weight to Dr. Wert's opinion, rejecting certain limitations reported by Mr. Sadlier's mother, or rejecting Mr. Sadlier's claims regarding the severity of his functional limitations. The ALJ met his burden under the proper legal standards, and his decision is supported by substantial evidence in the record. *See Delgado*, 722 F.2d at 572; *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.
3. The Clerk's Office is directed to enter **JUDGMENT** in favor of the Commissioner.

///

//

/

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order, enter Judgment for Defendant, and provide copies to all counsel.

**DATED** this __ 27th __ day of March 2018.

__ s/Edward F. Shea<br>EDWARD F. SHEA<br>Senior United States District Judge